Good afternoon, Robert Vallandigan for Mr. Vigil. I want to reserve two minutes or more if I get done in a shorter period of time. Is it necessary to do so? I don't intend to rehash what the briefs are, but I want to try to cut through what I think is a bit of confusion, or at least things could have been stated more clearly. This case where Mr. Vigil received a three-strike sentence of 25 years to life was premised upon his compliance with the sex registration requirement. It seems to me, and I should add that Mr. Vigil, after running through the state courts, he filed a pro per petition in the district court, which is how we got here today, and then I was appointed to represent him on appeal. So it's not a kind of a situation where it's easy to ascertain what Mr. Vigil's particular theories were, and I've done my best to try to interpret those as I could, because it's not a function of talking to a lawyer or reading something a lawyer presented. But fundamentally, I think when you cut through everything, it boils down to this. Mr. Vigil, I don't think anywhere in the record ever denied that he was advised throughout the course of the various events that he had to change or file a notice of change of address of his residence. For purposes of the argument, then, you concede he had knowledge. Well, knowledge in the sense of he signed the cards, the language was presented to him.  He had an obligation to register. And I think the question is not whether he was given those words, but how those words are to be interpreted by a defendant or a registrant requirement in his circumstances, and then applying all the facts that are in this case. And by that, I mean this. I tried to use plain English. What I'm trying to say. Do you misunderstand me if I said that? Well, I think it has two different contexts in which you can interpret it. He was told, and I don't think there's any question because he signed forms to that effect and he changed his registration requirement at various points in time, that he had a lifetime obligation, irrespective of statements he made to Detective Martin about 10 years or any of that stuff. But the question boils down to what do we do with the circumstances of him being at his mother's one-room apartment or house for some duration of time. And that's what the parties were really essentially fighting about at trial, I think. The evidence is undisputed, as we said in both arbories, and the government never disputed if this was a one-room apartment or building where he slept on the couch when he stayed there. And I don't think there's any dispute that the officers found some clothes from him there and that he used the place for his mail receipt. The issue is, in receiving his lifetime registration requirement notice and then having the court failing to instruct that there's an element of willfulness or even his mistake of law defense, whether a defendant or a registrant in his circumstance could understand what he was doing gave rise to a change of address notification. So we have people saying things like the government says, well, his mother told the officers at a certain point in time he was living there. Did the jury verdict, based on the instructions the jury got, establish that he did in fact live at his mother's apartment, which he never listed? I don't think it did, and here's why. Living is not a requirement of the statute. In other words, it's all framed in terms of residence, not did you live there, and that's the ambiguity. The same question. Did the jury verdict, in the context of the instructions the jury received, establish that the jury determined beyond a reasonable doubt that he resided at the Fifth Street address? The jury was instructed on the issue of residence, but it was never instructed that Mr. Vigil received a similar instruction when he got the notification language. In other words, there's a Calgic instruction they gave, which said here's what residence means, because the jury wouldn't know what it meant according to the court. But Mr. Vigil never got the same thing. And so to say, well, the jury necessarily made a determination that that was his residence is in conflict with the fact that Mr. Vigil himself never viewed it that way, based on what acts he was doing, having clothes there, taking a shower there, getting his mail there. That's the gist of his argument, I think, that unless and until you have a registrant being told what it means to reside in a particular place, like a jury is told years later when they charge them with failing to register. What was he told exactly? The card is in the supplemental excerpts that the government supplied, and it basically says you have a requirement to notify the local authorities if you change your residence. But it doesn't define it. It doesn't say a residence means something more than a mere passing through, as the jury was instructed. It doesn't say it's a place of abode. It gives him no meaning. And so essentially what he's arguing when the court fails to instruct that there's a willfulness element under the Garcia case that the California Supreme Court said there was, that he didn't willfully fail to register that address because under his interpretation of what he'd been told, the simple word residence, that wasn't a residence. And by the court failing to instruct on willfulness... It meant somebody could live in a camper and never register. No, but it would be a question of whether that person had been notified what... You got the same notice. If you change your residence, you notify. So the guy buys a camper and he lives in the back of it, and he goes from restaurant to restaurant to town to town. He'd never register. I will concede it's... That would be a perfectly lawful thing, the way you argue it. Well, I would concede that it's easier if you talk about a person who's staying only in one place. And I use the term staying because I don't want to get into living, residing, visiting. If he's physically going from place to place, the statute, I believe, even requires, even contemplates that you may not have a permanent residence. He drives his camper from San Francisco to Los Angeles. He's got to get there and then register. He doesn't have to register all along the way if he's only there briefly. But in this instance, he has two places that are really the nub of what the dispute was about. Is it his father's residence and his prior registration there adequate? Or was the fact that he was doing whatever he was doing at his mother's place something that, given the court's failure to instruct on willfulness as an element of the offense, and also instructing in CalJIC 1.20, which we noted at the beginning of our brief, that in effect it was a general intent crime, that his lack of knowledge that what he was doing, i.e. failing to register this new place, was a crime, is not a defense. The jury was specifically instructed that way. Does he testify in his own defense that I lacked any understanding of the word residence? He did not. He did not take the stand. Okay. But he did sign a document that said I'm aware now of my obligation to register every time I change my residence. He signed documents that said he was notified in the words on that card what his obligation was, but it never said. We can assume he has a normal understanding because he certainly doesn't contradict it. Well, the only thing I would say in that regard, Your Honor, is if we're going to hold him to a normal understanding, then why do we then instruct the jury when he's prosecuted years later as to what the word residence means when he was never given that? And that's what brings us full circle to him having a willful failure to register. If the judge refuses to instruct, it had to be willful. But moreover, it tells the jury it's a general intent crime. And if he guesses wrong that the facts of staying at your mother's house, however long you were staying there, if he guesses wrong but thinking that he didn't have to re-register again, then that's, in effect, where the denial of his constitutional rights come in because he's not being told what residence means. But we're going to tell a jury years later something more than he was told, and we're going to hold him under a general intent instruction to that same standard. So both of those things, when you fit them together, I think create the problem. I see a lot of force, actually, to what you're saying. The problem that I'm having is if he registered himself at his father's address, Buena Vista, and the evidence is he mostly stays at Buena Vista and sometimes he stays over at his mother's, then I can see where he'd have a really good faith defense that he did not willfully fail to give his address. The problem is that his registered address is Floyd Street. I honestly think that's a little ambiguous as well because the evidence, there was never really evidence presented as to what do you do when you have these multiple places you're staying at, and that's the confusion as well in this case is that it's not just Floyd. His position was that he was properly registered at his father's address and that this was just a place he was staying. Counselor, you're less than a minute if you want to reserve. Thank you. Let's hear it from the government. May it please the Court, I'm Alan Crown for the warden. Basically, we're here because of instructional error, an instructional error that the state appellate court recognized and based on the Garcia case, which interpreted Lambert, and the state court found that the error was harmless beyond a reasonable doubt. The question really is whether that was an unreasonable interpretation of U.S. Supreme Court law, and our position, of course, is that it was not. The state court properly applied the correct standard and found that the error was harmless beyond a reasonable doubt, and that's really what this court needs to look at. And you're saying he had knowledge. I believe that the jury found that he had changed his residence under the instructions that were given. You're arguing he had knowledge or you're conceding that he didn't have knowledge? Oh, we're arguing that he had knowledge, yes, and that he had signed the forms and the forms were quite clear that in changing his residence he needed to give notice. That's notice. Notice and knowledge are two different things. You have notice if the form tells you something. You have knowledge if you actually read it and absorbed it into your head. People sign things all the time without reading them, so they have notice but no knowledge. Well, yes, but in this case he had signed basically the same type of form more than once, and the notice was quite clear, and the type of registration that we're talking about is not something that's a terribly unusual situation. He had signed more than once. In fact, every year forms that close to the end of their terms give my law clerk raises because they pass the bar of some state. I have never read the form. I have no idea what it says. How many people do that? I agree that people do that. Usually not on something as serious as a situation where a failure to register is going to result in potentially a new jail term or new prison term. I mean, this is something that I think felons generally take seriously. Let me tell you why it bothers me. I recall when I was in my 20s, and I've noticed the same thing with my kids in their 20s. It's really hard to say what their domicile is. It's hard to say what their residence is. I kid my daughter. She now lives on a train between New Haven and Washington because she goes back and forth so much. She's there as much as any place else. I don't know what their residence is. This guy, he lived with his wife and her girlfriend and children for a while. They threw him out, I guess. He lived sometimes with his father, sometimes with his mother. It doesn't look like he supported himself and had his own place at any time. I can see where the instruction that he didn't get about willfulness could be the whole case. Well, let me say this about that, Your Honor. He's in a situation there where if he lists multiple addresses and he lists too many, it's not a problem. I mean, he's not going to have a criminal violation for listing too many places on the form. He can list two places, three places. It doesn't have blanks for that. It just has blanks for one. Now, a smart lawyer would list both, kind of like your winter home and your summer home. Yeah, I think if you have multiple residences, you should list them, and he should have too. It doesn't say that, though, does it? Can I just put down and see the San Francisco telephone directory? That's what you're arguing. Well, not that he's going to append the telephone directory, but if he's spending a substantial amount of time someplace, then... How about whoever will take me in? Well... I don't make a living where I can support myself and rent an apartment. I sleep at the home of whoever will take me in. I think somebody who's got a felony as a sex offender and a registration requirement is in a different position than your children or you or I. I mean, they are in a position where the authorities want to know where they are living, and it's very clear to them from the form that the authorities want to know that. And they're risking further prison time if they don't say so. So I think they need to be clear about where they're living and making sure that the authorities are informed. So a guy like this has to write a C-attached sheet and just have a little narrative of where he lives. Well, I think... That actually seems kind of reasonable to me, but I'm still wondering why he doesn't need a willfulness instruction. Oh, it should have had a willfulness instruction. I mean, there's no question that there should have been an instruction about actual knowledge. And why it doesn't matter that he didn't get one as opposed to being harmless beyond a reasonable doubt. Well, it is. It's harmless. Because he was in a situation where he had the notices, and while those don't equate to actual knowledge in the sense that you can say for sure that somebody had knowledge, here it's a situation where, given his circumstances, he knew. They didn't have any trouble finding him? They found him, yes. I forget exactly how much trouble they had to go to to run him down. He wasn't at the residence address that he had listed. So they did have some difficulties in this. And he was not certainly complying with the spirit of the statute. And I think the notices that he received made it clear to him that he wasn't. And he wasn't complying literally with it either. Anything further, counsel? As to the second part, the question of this other defense that was not raised as a defense and the claim that the trial judge had failed to give correct instructions sua sponte, I think that's a very different situation. Well, we have a number of positions in the brief, and I won't belabor those. But I think it's a very different situation where you have something where there's a defense that the defendant is trying to raise, and the trial judge refuses to give instructions on that defense, whether it's an entrapment as was in Matthews or in other types of cases, and where you've got a situation where there's some bit of evidence there. The defendant is not relying on that in the course of the trial, does not ask for instructions on it, and then to say after the fact, well, the trial judge failed to instruct sua sponte on this. I think that that's a situation where the courts do not need to bend over backwards for that situation, but it's a claim that is being raised for the first time here and need not be addressed other than that. Counsel? Yes, Your Honor. I looked at the state decision with respect to what Judge Beeser asked you, and it says the officers went to the defendant's mother's Fifth Street address looking for a defendant. They had obtained this address for defendant from the Department of Motor Vehicles after failing to find him at the Floyd Street address that he had most recently registered. Now, the way I put that together is he never registered the Fifth Street address as where he lives. He wasn't at Floyd Street, but he sure wasn't hiding that he had a connection to the Fifth Street address. This was no secret hideout. It was in the easiest address of all to get, the DMV address. I think those were even public record in a lot of places, and that's how they found him, and I think he happened to be taking a shower there at the time. I can't remember exactly. Why wouldn't that be enough evidence of good faith? He's revealing the address so that the instruction might have mattered. Well, I think, Your Honor, if he's claiming the Fifth Street address as his residence with the Department of Motor Vehicles and he's claiming that as his residence address with other places, other agencies, then he should have it on his phone. That doesn't follow to me. It can be a mail address but not a residence address. All of my children get some of their important mail at my address, my wife and my address. Even though they're all adult children and don't live there anymore. They're just there for a week at Christmas. It's just the most permanent address they have at this stage in their lives. So they get important mail there. He might reasonably list it without residing there just because his mother is more responsible with mail than his father. But if he can list it with the DMV, why can't he list it with the proper authorities to satisfy the Section 290 requirement? I mean, he could have. And he should have. And he didn't. But the Buena Vista address was in their records even though he changed it. Well, yes, and he apparently had stayed there as a residence at some point in time. But it's his obligation to keep those residence addresses. That's his father's address, and he alternates between them now, right? At the time of his arrest. I'm not entirely clear on just exactly how many different places he was living. But, again, it's his obligation to list those. Counsel, your time has expired. Thank you, Your Honor. Thank you. Mr. VanLandingham, you have a little reserve time. Real briefly, on page 5 of the opening brief, there's only one full paragraph, and that's where we delineate what the court actually did on the instructions. And I think that goes to the heart of the prejudice. Not only did the court not instruct on willfulness or knowledge, and I don't mean that he knew he had this registration card he'd signed, but what did it mean, in effect, in the circumstances he was in at that time with his mother's couch. But the court also instructed that it was a general intent crime, and even if the defendant may not know his act or omission was unlawful, you convict him. That, to me, is what makes the prejudice really easy to argue here, because it wasn't just the failure of one instruction, but it was, in effect, telling the jury exactly the opposite. Knowledge, essentially, becomes irrelevant because it's a general intent crime. You guess wrong on the couch on whether it needs to be registered, and you're out of luck. Thank you, counsel. The case just argued will be submitted for decision, and we will now hear argument in Shannon v. Newland. Thank you.
judges: Beezer, O'scannlain, Kleinfeld